# UNITED STATES DISTRICT COURT
for the
District of New Mexico

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 1 2 2016

MATTHEW J. DYKMAN
CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
 )
Information associated with Facebook User ID - )
Larry Lee Emerson II 1000062367778222 )
 )

Case No. 16-MR-584

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Attachment A

located in the    Northern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:
Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. 111 | assault, resisting, or impeding a Federal Officer |

The application is based on these facts:
See Attached Affidavit and Attachments A & B hereby incorporated by reference as if fully restated herein.

☒ Continued on the attached sheet.
☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lance Roundy, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 12, 2016

*Judge's signature*

City and state: Farmington, NM

B. Paul Briones, US Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California:

1) **100006236778222 (Larry Lee Emerson II)**

## ATTACHMENT B

## Particular Things to be Seized

I.  **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All Photoprints, including all photos uploaded by referenced user ID and all photos uploaded by any user that have that user tagged in them;

(d) All Neoprints, including profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected

"Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(n) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(o) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

2

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 111 involving LARRY LEE EMERSON JR. since June 27, 2016, until the signing of this order, including information pertaining to the following matters:

(a) Conversations and private messages to the user, from the user, and between the user referenced in this affidavit and others during the date range requested;

(b) Private messages and Check-ins that would indicate the whereabouts and actions of referenced user;

(c) Wall Posts made by referenced user;

(d) Photographs posted by referenced user;

(e) Any other materials, messages, posts, etc., by referenced user relative to the assault of John Doe on July 6, 2016;

(f) Records relating to who created, used, or communicated with referenced user, including records about their identities and whereabouts.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID – **LARRY LEE EMERSON II 100006236778222,** WHICH IS STORED AT PREMISES CONTROLLED BY FACEBOOK | Case No. 16-MR-584<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Lance Roundy, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscribers or customers associated with the user ID.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since September 2008. I am currently assigned to the FBI's Farmington Resident Agency, Farmington, New Mexico, where my responsibilities include the investigation of individuals who commit offenses in violation of Title 18 of the United States Code. In my training and experience, individuals who are engaged in criminal activity often communicate with others the details of the criminal activity. This communication often comes in the form of social media,

such as Facebook. I have completed basic training courses offered through the FBI, which address computer and cyber crime investigations. Many of these courses have taught the fundamentals of using digital tools to conduct investigations and how criminals use social media to conduct or further their criminal activities. I am also familiar with and often access various internet resources relevant to the investigations I conduct.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. §§ 111 has been committed by LARRY LEE EMERSON JR., referred to herein as "EMERSON." There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5. On or about July 6, 2016, Law Enforcement Officers with the Navajo Nation Police Department responded to a dispatch call of an alleged assault occurring at or near Toadlena, New Mexico. Officers were then advised that the subject of the alleged assault, EMERSON, was located in a vehicle parked near a trailer home in Shiprock, New Mexico, on the Navajo Indian Reservation. Officers arrived at the location and made contact with EMERSON, who was sitting in the rear passenger seat of a Sport Utility Vehicle ("SUV"). As Officers made contact with EMERSON, EMERSON began to raise his voice in agitation and refused to follow the Officer's commands. A short time into the confrontation with EMERSON,

2

Officer John Doe, referred to herein as "EB," a Navajo Nation Police Officer arrived on scene to provide assistance. EMERSON became extremely upset at the presence of EB and verbally threatened to fight EB if he was not a police officer.

6. EMERSON was given the command to place his hands behind his back, but refused to do so, and continued to curse and yell at the Officers. EB then noticed a small child inside of the vehicle occupied by EMERSON, and requested the removal of the child by a female standing nearby. The female then removed three children from the vehicle and took the children towards a single-wide mobile home trailer located on the property. EB instructed EMERSON to calm down, put his hands behind his back, to which EMERSON refused to do so. EMERSON was then observed clinching his hands into fists and raising them at EB in a fighting stance.

7. EB approached EMERSON and grabbed his wrist to which EMERSON then attempted to punch EB in the face; however, EB was able to avoid the initial punch. EB eventually deployed pepper spray to the facial area of EMERSON as EMERSON continued to resist. During the resistance, EMERSON punched EB in the face breaking his prescription glasses, leaving EB with a loss of vision from his broken glasses as well as the affects of the remnants of the pepper spray. During the fight, EMERSON also bit EB several times on his arms, face and head and tried to pull EB's police uniform over his head, to further incapacitate the Officer, ripping the Officer's uniform in the process. EB, fearing for his safety, and the safety of the other Officers, was able to break the grasp of EMERSON, and retreat a short distance away, allowing EMERSON to lock himself inside of the SUV.

8. Upon retreat from the altercation, EB noticed blood streaming from his cheek as a result from the punches and the bites, and felt pain in his face and head. While EB was attending

3

to his injuries, EMERSON jumped out of the SUV and fled the scene on foot, avoiding Law Enforcement apprehension. EB went to the Northern Navajo Medical Center in Shiprock where he received treatment for his injuries.

9. A review of public Facebook posts made by user ID Larry Lee Emerson II revealed several posts indicating that the individual making the posts fought with law enforcement and eluded apprehension. A post dated July 7 at 2:49 PM stated, "Cops tried to cuff me lastnight, i told them that they better get 10 cops. 3 came at me, i swung on them, even bit ones bald head several times..hahah..they mased and tased me, i kept fighting, they backed off. I ran, hopped a fence, gone. Looks like ill be on the run for a while." A post dated June 27 by user ID Larry Lee Emerson II depicted a photograph of an individual resembling EMERSON with what appears to be a handgun in his right hand. The post stated, "Waiting for bigfoot, click clack haha." A post dated July 21 at 1:46 AM by user ID Larry Lee Emerson II stated that the individual making the post "beats up cops, packs straps and such..." The photograph attached to the user ID account for Larry Lee Emerson II resembled EMERSON.

10. On August 2, 2016, a criminal complaint and subsequent arrest warrant for EMERSON was signed by United States Magistrate Judge Kirtan Khalsa, District of New Mexico. The following day, on August 3, 2016, EMERSON was arrested in Gallup, New Mexico.

11. On or about July 21, 2016, a preservation request to Facebook for the user account of Larry Lee Emerson II (**100006236778222**) was sent. The preservation request was sent to Facebook via their online website for Law Enforcement Officials. Facebook confirmed the receipt of said requests via email on the same day they were sent.

4

12. Through my training and experience, I know that subjects of crimes often utilize Facebook as a means to communicate with co-conspirators, friends, and/or associates. In some instances, subjects may even communicate with their victim(s) via Facebook prior to and/or after the commission of a crime. Facebook communications may be in the form of private messages, wall posts, comments on photographs, videos, webpage links, and/or instant message communications. Facebook communications can indicate links and relationships between subjects and victim(s) and/or other subjects and co-conspirators.

13. I also know through my training and experience that subjects often create wall posts on their Facebook account disclosing their activities and involvement in a crime. Subjects may even brag on Facebook about or provide details concerning the crime(s) they committed, either openly to the public or privately. On occasion, various posts can reveal a subject's thought process, beliefs and ideologies, intent, and preparations and plans.

14. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

15. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

5

16. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

17. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

18. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user

and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

19. Facebook has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

20. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

21. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

22. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

7

23. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

24. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

25. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

26. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

27. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

28. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

29. Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or

8

head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook also assigns a group identification number to each group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

30. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

31. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

32. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the

9

service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

33. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

34. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

35. Based on the forgoing, I request that the Court issue the proposed search warrant.

36. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i) and "is in . . . a

district in which the provider . . . is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A)(ii).

37.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Lance Roundy
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on August 12, 2016

B. Paul Briones
UNITED STATES MAGISTRATE JUDGE

11